<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
PETER Y. LEE, on behalf of himself and  :
the putative class,                     :
                                        :     **Civil Action No. 15-454 (KM)**
             **Plaintiff,**             :
                                        :
       **v.**                           :
                                        :     **REPORT AND RECOMMENDATION**
CENTRAL PARKING CORPORATION,            :
et al.,                                 :
                                        :
             **Defendants.**            :
_____ :

### I.   INTRODUCTION

This matter comes before the Court on the motion of Plaintiff Peter Y. Lee, on behalf of himself and the putative class (collectively "Plaintiff"), to remand this action to the Superior Court of New Jersey, Law Division, Essex County (the "Superior Court") [D.E. 26].  Pursuant to Local Civil Rule 72.1, the Honorable Kevin McNulty, United States District Judge, referred the motion to this Court for a Report and Recommendation.[1]  Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Undersigned respectfully recommends that the District Court deny Plaintiff's motion.

---

[1] A decision to remand is dispositive.  <u>See</u> <u>In re U.S. Healthcare</u>, 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court.").  Accordingly, the Undersigned makes the following Report and Recommendation.

## II.   BACKGROUND

Plaintiff Peter Y. Lee, a New Jersey resident, brings this putative class-action lawsuit for alleged violations of the New Jersey Fair Credit Reporting Act ("NJFCRA"), <u>N.J.S.A.</u> 56:11-28, <u>et seq.</u>, and the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), <u>N.J.S.A.</u> 56:12-14, <u>et seq.</u> against:  (i) Defendants Central Parking Corporation, Central Parking System, Inc., Central Parking System of New Jersey, Inc., Central Parking System of New Jersey, LLC, and SP Plus Corporation d/b/a Standard Parking (collectively, the "SP Defendants"), and (ii) Defendants Port Imperial South L.L.C., Port Imperial Ferry Corp. d/b/a/ NY Waterway, and Port Imperial Corp. (collectively, the "Port Imperial Defendants").  <u>See generally</u> Compl., Exh. 1 to Notice of Removal, Jan. 22, 2015, D.E. 1-2. [2]

Plaintiff's suit concerns credit and debit card transactions that occurred at a 24-hour public parking facility, located at 500 Avenue at Port Imperial, Weehawken, New Jersey ("Port Imperial Facility").  <u>See id.</u> at ¶¶ 1-3, 6.  Specifically, Plaintiff alleges that the Defendants violated section 56:11-42 of the NJFCRA, and section 56:12-15 of the TCCWNA, by providing Plaintiff with electronically-printed receipts that displayed more than "five digits of [his] credit card account number."  <u>See id.</u> at ¶ 1.  Plaintiff authorized five credit card transactions at the Port Imperial Facility:  (i) on October 4, 2012; (ii) on February 12, 2013; (iii) on June 12, 2013; (iv) on July 9, 2013; and (v) on July 29, 2013.  <u>See id.</u> at ¶¶ 30-35.  On each of those dates, Plaintiff parked his vehicle at the Port Imperial Facility, and paid for parking with a credit card.  <u>See id.</u> At the point of each sale, except the July 29, 2013 transaction, a parking attendant or cashier

---

[2] For the purposes of this motion, the Court must accept all allegations in the Complaint as true.  <u>See</u> <u>Steel Valley Auth. v. Union Switch & Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir. 1987) ("Ruling on whether an action should be remanded to the state court from which it was removed, the district court must focus on the Plaintiff's complaint at the time the petition for removal was filed.  In so ruling, the district court must assume as true all factual allegations of the complaint.").

electronically printed a receipt, which allegedly contained ten digits of Plaintiff's credit card account number; specifically, the receipt displayed "the first 6 digits, followed by 6 asterisks, and the last 4 digits of plaintiff's account number."  See id.; see also Receipts, Exh. 1 to Notice of Removal, D.E. 1-2.

Accordingly, on November 7, 2014, Plaintiff filed the putative class action Complaint in the Superior Court against the Defendants seeking, among other things, statutory damages, injunctive relief, and punitive damages.  See generally Compl., Exh. 1 to Notice of Removal, Jan. 22, 2015, D.E. 1-2.  As stated in the Complaint, the putative class consists of "[a]ll individuals to whom defendants, jointly and severally, provided an electronically-printed receipt at the point of sale or transaction, which receipt displays more than the last five digits of their credit or debit card account number between November 6, 2010, through July 29, 2013."  See id. at ¶ 40.

On November 14, 2015, counsel for Plaintiff, Robert A. Solomon, Esq., mailed a letter addressed to Robert N. Sacks, Esq., general counsel for the SP Defendants, and attached copies of the Summons, the Complaint, and several acknowledgement of service forms.  See Declaration of Robert A. Solomon ("Solomon Decl.") in Supp. of Pl.'s First Mot. to Remand, at ¶ 2, Feb. 1, 2015, D.E. 6-4; see also Exhs. A, B to Solomon Decl., Feb. 1, 2015, D.E. 6-5.  On November 18, 2014, Mr. Sacks signed the return receipt for the November 14, 2015 letter and copies of the Summons, the Complaint, and acknowledgement of service forms.  See Solomon Decl., at ¶ 3, Feb. 1, 2015, D.E. 6-4; see also Exh. B to Solomon Decl., Feb. 1, 2015, D.E. 6-6.

Thereafter, on November 26, 2014, Steven Gistenson, Esq., lead counsel for the SP Defendants in this case, contacted Mr. Solomon.  See Solomon Decl., at ¶ 5, Feb. 1, 2015, D.E. 6-4; Declaration of Steven H. Gistenson ("Gistenson Decl.") in Supp. of SP Defs.' Opp'n Br., at

¶ 4, D.E. 15-1.  Mr. Gistenson informed Mr. Solomon that he would be out of the country from January 8 through January 19, 2015, and would not have "an opportunity to review the Complaint with [his] clients and respond to the Complaint."  See Gistenson Decl., at ¶ 6, Mar. 2, 2015, D.E. 15-1.  Thus, Mr. Gistenson requested and Mr. Solomon agreed to allow the SP Defendants to wait until December 23, 2014 to acknowledge service, so that their response would be due at a later date.  See Solomon Decl., at ¶ 5, Feb. 1, 2014, D.E. 6-4; Gistenson Decl., at ¶¶ 7-8, Mar. 2, 2015, D.E. 15-1.  On December 23, 2014, the SP Defendants executed and returned the acknowledgement of service ("Acknowledgment of Service" or "Acceptance of Service") forms.  See Exh. 1 to Gistenson Decl., Mar. 2, 2015, D.E. 15-1.

On December 16 and 17, 2014, Plaintiff served the Port Imperial Defendants with the Summons and Complaint.  See Solomon Decl., at ¶ 6, Feb. 1, 2014, D.E. 6-4; Affs. of Service, Exh. C to Solomon Decl., Feb. 1, 2015, D.E. 6-7.

On January 22, 2015, only the SP Defendants removed the action to this Court pursuant to 28 U.S.C. § 1446, asserting that the Court may exercise original subject matter jurisdiction over this matter under 28 U.S.C. § 1332, and the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA").  See Notice of Removal, at ¶ 1, Jan. 22, 2015, D.E. 1.  Specifically, the Notice of Removal alleged that:  (a) the amount in controversy exceeds $5,000,000; (b) the proposed class of plaintiffs contains more than 100 members; and (c) minimal diversity is met because at least one member of the purported class of plaintiffs is a citizen of a state different from any defendant.  See id. at ¶¶ 1, 10.

On February 1, 2015, Plaintiff moved to remand this action to the Superior Court.  See Pl.'s First Mot. to Remand, Feb. 1, 2015, D.E. 6.  On February 12, 2014, the SP Defendants moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6).  See SP Defs.' Mot. to Dismiss, Feb. 12, 2015, D.E. 12.[3]  On March 18, 2015, the Court administratively terminated Plaintiff's motion to remand, see D.E. 6, without prejudice to Plaintiff's right to refile the motion and incorporate the new arguments in his reply brief into a revised moving brief.  See Order, Mar. 18, 2015, D.E. 25.

Accordingly, Plaintiff filed the second motion to remand [D.E. 26] on March 19, 2015.[4] See Pl.'s Second Mot. to Remand, Mar. 19, 2015, D.E. 26.  Plaintiff contends that the Court should remand this matter because removal to this Court was untimely under 28 U.S.C. § 1446, and the SP Defendants did not sustain their burden of establishing CAFA jurisdiction.  See id. at 2-3.  Moreover, Plaintiff argues that even if the SP Defendants satisfied their burden of proving federal jurisdiction, the "local controversy" and "home state" exceptions to CAFA apply and warrant remanding this action to the Superior Court.  See id. at 3; see also U.S.C. § 1332(d)(4)(A), § 1332(d)(4)(B).

The SP Defendants counter that removal was timely.  See SP Defs.' Opp'n Br., at 6-11, Apr. 20, 2015, D.E. 33.  The SP Defendants also assert that they met their burden of establishing jurisdiction under CAFA, and therefore the burden shifts to Plaintiff to prove, by a preponderance of the evidence, that either of the CAFA exceptions applies.  See id. at 11-13. The SP Defendants argue that Plaintiff has not met his burden.  See id. at 13-32.

---

[3] On March 20, 2015, the District Court administratively terminated the SP Defendant's motion to dismiss [D.E. 12] pending this Court's decision on the motion to remand.  See Text Order, Mar. 20, 2015, D.E. 29.

[4] For the purposes of this Report and Recommendation, the Court will refer to certain dates and supporting documents from the parties' original filings, see D.E. 6, 15, 18, 19.

III.   Discussion

A.  Motion to Remand

Title 28, Section 1441(a) of the United States Code permits a defendant to remove a civil action in state court to federal court where the action could have been filed originally, that is, where the federal court has subject matter jurisdiction over the action.  See 28 U.S.C. § 1441; Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  Section 1446 outlines the procedures for removal, and Section 1447 outlines the procedures following removal.  See 28 U.S.C. §§ 1446, 1447.  Defects in removal may be procedural or jurisdictional.  Under 28 U.S.C. § 1446(b)(1), a defendant has thirty days to remove a case, and this time limit "is a procedural provision, not a jurisdictional one."  Farina v. Nokia Inc., 625 F.3d 97, 114 (3d Cir. 2010).  In turn, a plaintiff's "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).  Jurisdictional defects, however, may be raised at any time. Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996).

The party seeking removal bears the burden of demonstrating that removal is proper. Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007); see also Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009).  Removal is improper, and a district court can thus grant a remand, only if the court lacks subject matter jurisdiction or the removal was procedurally defective.  See 28 U.S.C. § 1447(c); PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993).  Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

Here, the preliminary issue before the Court is whether there was a procedural defect in

the notice of removal, namely, whether the SP Defendant's Notice of Removal was timely.

### 1. The Thirty-Day Time Limit for Removal

The notice of removal "shall be filed within 30 days after the receipt by the defendants, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b).  The United States Supreme Court has held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999).  The Court based this interpretation of § 1446 "in light of a bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  Id. at 347.  Accordingly, "the removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service."  Di Loreto v. Costigan, 351 F. App'x 747, 751 (3d Cir. 2009) (citing Murphy Bros., 526 U.S. at 350.).  Whether a defendant has waived service so as to trigger the removal period is a question of state law.  See Di Loreto, 351 F. App'x at 752.  In addition, the Third Circuit has interpreted the words "initial pleading" to mean the complaint.  See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 222-23 (3d Cir. 2005).

In this case, to determine whether the SP Defendant's Notice of Removal was timely, the Court must first determine whether Plaintiff properly served process on the SP Defendants.  Second, regardless of whether service was proper, the Court must determine whether simultaneous receipt of the Summons and Complaint triggered the thirty-day removal period.  Finally, the Court must consider whether service was nonetheless effected by waiver or

otherwise, thereby triggering the removal period.

### i. Whether Service of Process was Proper

In determining whether a defendant was properly served before removal, a federal court must apply the law of the state under where service was effectuated. Giovanni v. Mentor Worldwide, LLC., No. 12-4435 (JBS/JS), 2012 WL 5944181, at *3 (D.N.J. Nov. 21, 2012). Under New Jersey law, personal service is the primary method of effecting service. See N.J. Ct. R. 4:4-4(a), 4:4-5(a). There is nothing in the record that demonstrates that Plaintiff attempted to personally serve the SP Defendants. However, the SP Defendants assert that Plaintiff served them with the Summons and Complaint by mail pursuant to New Jersey Court Rule 4:4-4(c), which provides:

> Optional Mailed Service. Where personal service is required to be made pursuant to paragraph (a) of this rule, service, in lieu of personal service, may be made by registered, certified or ordinary mail, provided, however that such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto, and provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto. This prohibition against entry of default shall not apply to mailed service authorized by any other provisions of this rule. If defendant does not answer or appear within 60 days following mailed service, service shall be made as is otherwise prescribed by this rule, and the time prescribed by R. 4:4-1 for issuance of the summons shall then begin to run anew.

New Jersey Court Rule 4:4-4(c).

"State and federal courts have recognized [that] R. 4:4-4(c) is an authorized, permissible form of service under New Jersey law and effective for obtaining personal jurisdiction over a defendant who appears, answers or otherwise responds to service." Gelber v. Kirsch, No. 14-6768 (JLL/JAD), 2015 WL 1471960, at *5 (D.N.J. Mar. 30, 2015) (citations omitted). Moreover, case law in this district also suggests that optional mail service under this Rule is sufficient to trigger a defendant's thirty-day deadline to remove under 28 U.S.C. § 1446(b).

MacDonald v. Twp. of Wall Police Dept., No. 11-1598, 2011 WL 1740410, at *2 (D.N.J. May 4, 2011); Granovsky v. Pfizer, Inc., 631 F. Supp. 2d 554, 562 (D.N.J. 2009).  Although Plaintiff did not mention Rule 4:4-4(c) in his briefings, see D.E. 6, 18, 26, and 35, Plaintiff argues service was properly effectuated on the SP Defendants on November 18, 2014 because that was when Mr. Sacks received the Summons and Complaint by mail and signed the return receipt; thus, the SP Defendants' January 22, 2015 removal was untimely.  See Pl.'s Second Mot. to Remand, at 4, 11, Mar. 19, 2015, D.E. 26-3.  The SP Defendants, however, contend that their receipt of the Summons and Complaint by certified mail did not constitute "formal service" under Rule 4:4-4(c); thus the thirty-day deadline to remove did not begin until they accepted service by signing and executing the Acknowledgement of Service forms on December 23, 2014.  See SP Defs.' Opp'n Br., at 9, Apr. 20, 2015, D.E. 33.  Accordingly, the Court must determine whether the SP Defendants were properly served pursuant to Rule 4:4-4(c).

As mentioned above, under the Rule, mailed "service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto . . . within 60 days following mailed service." R. 4:4-4(c).  Here, it appears the SP Defendants did not answer the Complaint in the Superior Court.[5]  Thus, the Court need determine only whether the SP Defendants have otherwise "appeared" in response to the mailed service within sixty days of such service.

Courts in this district have held that filing a notice of removal constitutes an appearance under Rule 4:4-4(c).  See Macdonald, 2011 WL 1740410, at *1 (finding that filing a notice of removal demonstrates that defendant has notice of the suit and thus constitutes an answer or an

---

[5] Indeed, the SP Defendants assert that as of January 22, 2015, the date they filed the Notice of Removal, no additional pleading or paper has been filed in the Superior Court other than the Complaint and several acknowledgements of service.  See Notice of Removal, at ¶ 9, Jan. 22, 2015, D.E. 1.

appearance under Rule 4:4-4(c)); <u>see also</u> <u>Giovanni</u>, 2012 WL 5944181, at *4 ("This is sufficient to constitute an appearance under R. 4:4-4(c) because Defendant filed its notice of removal on the state court docket and acknowledged notice and receipt of Plaintiffs complaint and summons").  Here, the SP Defendants filed their Notice of Removal on January 22, 2014, which was outside the sixty days following mailed service.  <u>See</u> Notice of Removal, Jan. 22, 2015, D.E. 1.  Thus, because the SP Defendants did not "appear" within sixty days following mailed service, service was not effective for obtaining in personam jurisdiction over the SP Defendants.

### ii.   Whether Informal Transmission of the Complaint and Summons Triggers Thirty-Day Removal Period

Plaintiff contends that, regardless of service, the SP Defendants' simultaneous receipt of the Summons and Complaint is all that is required to trigger the thirty-day removal clock under the Supreme Court's decision in <u>Murphy Brothers</u>.  <u>See</u> Pl.'s Second Mot. to Remand, at 8-12, Mar. 19, 2015, D.E. 26-3.  Plaintiff asserts that remand is appropriate here because:  (1) the SP Defendants received Plaintiff's papers on November 18, 2014, which was more than thirty days before the SP Defendants filed their Notice of Removal; (2) the papers were delivered to Mr. Sacks, who had authority to accept service of process for the SP Defendants; and (3) the SP Defendants had notice of the Plaintiff's state court action because the papers delivered to them included a copy of the Complaint and the Summons.  <u>See</u> <u>id.</u> at 11-12.  However, Plaintiff's argument incorrectly conflates due process, notice, service of process, and personal jurisdiction. Although actual notice may comport with due process, <u>see</u> <u>Sobel v. Long Island Entm't Prods., Inc.</u>, 329 N.J. Super. 285, 292-94 (App. Div. 2000), substantial deviations from the service of process rules will not guarantee that a court has jurisdiction over a party.  <u>See</u> <u>id.</u> at 293-94 ("The defendant had actual notice of the suit, but neither of the methods of service which were used complied with the applicable rules for obtaining <u>in personam</u> jurisdiction.").

Indeed, proper service and a court's acquisition of personal jurisdiction were central to the Supreme Court's decision in Murphy Brothers.  Advanced Surgery Ctr. v. Conn. Gen. Life, Ins. Co., No.12-2715 (JLL), 2012 WL 3598815, at *7 (D.N.J. July 31, 2012).  In Murphy Brothers, a plaintiff faxed a complaint without a summons to a defendant and asserted that defendant's receipt of the complaint was sufficient to start the removal clock.  Murphy Bros., 526 U.S. at 348-49.  The Eleventh Circuit Court of Appeals agreed, finding that Congress had endorsed the "receipt rule," that is, mere receipt of a complaint and not service was all that § 1446(b) required.  Michetti Pipe Stringing, Inc. v. Murphy Bros., Inc., 125 F.3d 1396, 1398 (11th Cir. 1997).  The Supreme Court, however, rejected the Eleventh Circuit's interpretation.  The Supreme Court reasoned that Congress did not mean to upend a concept as fundamental as personal jurisdiction by allowing a court to take away a party's procedural rights before having authority over that party.  See Murphy Bros., 526 U.S. at 356 ("In sum, it would take a clearer statement than Congress has made to read its endeavor to extend removal time (by adding receipt of the complaint) to effect so strange a change—to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before service of summons, i.e., before one is subject to any court's authority."); see also id. at 350 ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant . . . . In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").

Plaintiff interprets Murphy Brothers and Yorker v. Manalapan Police Dept., No. 04-5170, 2005 WL 1429879 (D.N.J. June 17, 2005), to mean that mere receipt of the complaint and summons, regardless of whether that constitutes formal service, is sufficient to trigger the

removal period.  See Pl.'s Second Mot. to Remand, at 10-11, Mar. 19, 2015, D.E. 26-3.

However, the Court in Murphy Brothers rejected the receipt rule and grounded its "entire

analysis . . . in the notion that it would be unfair to impose any kind of procedural imposition on

a defendant over whom the court did not yet have personal jurisdiction."  Bidlingmeyer v.

Broadspire, No. 11-6144, 2012 WL 2344862, at *3 (D.N.J. June 19, 2012).  Further, the Court

explained that applying such a rule would allow a court to take away "one's procedural rights . . .

before one is subject to any court's authority."  Murphy Bros., 526 U.S. at 356.  Thus, given the

Supreme Court's rejection of the receipt rule and its emphasis on procedural rights and personal

jurisdiction, this Court interprets Murphy Brothers as requiring that service be proper enough to

make a defendant subject to a court's authority.  See Advanced Surgery Ctr., 2012 WL 3598815,

at *8; see also Bidlingmeyer, 2012 WL 2344862, at *2 ("The Supreme Court's decision in

Murphy dictates that the removal clock does not begin to run until the plaintiff has obtained

personal jurisdiction over the defendant."); Di Loreto, 351 F. App'x at 751 (stating that "the

removal period for a defendant does not begin to run until that defendant is properly served or

until that defendant waives service" and considering Pennsylvania law to determine whether

service was proper or whether service was waived); Lee v. Genuardi's Family Markets, No. 10-

1641, 2010 WL 2869454, at *1 (D.N.J. July 19, 2010) ("The thirty-day removal deadline under §

1446(b) is not triggered by 'mere receipt of the complaint,' but only by 'formal service' . . . . The

Supreme Court has made clear that the '"service or otherwise" language [in § 1446(b)] was not

intended to abrogate the service requirement.'") (quoting Murphy Bros., 526 U.S. at 355

(brackets in Lee).

     Therefore, informal transmission of the summons and complaint that is insufficient under

state law to confer personal jurisdiction over a defendant will not trigger the time for removal.

Here, Plaintiff's service was insufficient under Rule 4:4-4(c) to confer personal jurisdiction, and thereby failed to start the thirty-day removal clock.

### iii.   Whether Service was Effected by Waiver

Given that Plaintiff's provision of the Summons and Complaint, by itself, did not trigger the removal clock, the Court considers whether the thirty-day removal period was nevertheless started since the removal period may begin to run where "that defendant waives service."  See Di Loreto, 351 F. App'x at 751.  Plaintiff argues that service was nevertheless effected by waiver on November 18, 2014 when the SP Defendants received the Summons and Complaint.  See Pl.'s Second Mot. to Remand, at 9-10, Mar. 19, 2015, D.E. 26.  However, the SP Defendants assert that service was effected when they signed the Acknowledgement of Service forms on December 23, 2014.  See SP Defs.' Opp'n Br., at 7-10, Apr. 20, 2015, D.E. 33.  The Court considers each argument.

### a.   Waiver/Acceptance of Service

Having determined that Plaintiff did not formally serve the SP Defendants under New Jersey law, the Court must next determine whether and when the SP Defendants waived service so as to trigger the removal period.   See Di Loreto, 351 Fed. App'x at 752.  Plaintiff seems to assert that counsel for SP Defendants' receipt of the Summons and Complaint on November 18, 2014, and subsequent communication with Plaintiff's counsel constitute waiver of service; thus, the SP Defendants' removal of the matter more than thirty days after November 18, 2014 was untimely.  Pl.'s Second Mot. to Remand, at 8-9, Mar. 19, 2015, D.E. 26.  Counsel for Plaintiff mailed Mr. Sacks copies of the Summons, the Complaint, and several acceptance of service forms, and Mr. Sacks signed the return receipt on November 18, 2014.  See Solomon Decl., at ¶ 2, Feb. 1, 2015, D.E. 6-4; see also Exhs. A, B to Solomon Decl., Pl.'s First Mot. to Remand, D.E.

13

6-5.  Thereafter, Mr. Gistenson engaged in discussions with Plaintiff's counsel regarding extensions of time and, according to Plaintiff, represented that they had no objection to accepting service on behalf of the SP Defendants, and thus waived service.[6]  See Solomon Decl., at ¶ 5, Feb. 1, 2015, D.E. 6-4; see also Pl.'s Reply, at 12, Mar. 8, 2015, D.E. 19.  Plaintiff concedes that all counsel agreed to allow the SP Defendants to acknowledge service on December 23, 2014.  See id.  Indeed, on December 23, 2014, the SP Defendants executed and returned the Acknowledgement of Service forms.  See Exh. 1 to Gistenson Decl., Mar. 2, 2015, D.E. 15-1.  Nevertheless, Plaintiff argues that the SP Defendants waived service on November 18, 2014.

The effective date of service under Rule 4:4-4(c) is the date the waiver occurs, not when the defendant first received the summons and complaint.  Alicea v. Outback Steakhouse, No. 10-4702 (JLL), 2011 WL 1675036, at *3 (D.N.J. May 3, 2011).  Thus, despite counsels' discussions, service under Rule 4:4-4(c) was not waived until defense counsel signed the Acknowledgement of Service forms.  That is the point at which the waiver was clear and documented for purposes of determining the completion of service or waiver thereof.  This conclusion is consistent with other courts in the Third Circuit that have considered the issue.  See, e.g., Cmiech v. Electrolux Home Prods., Inc., 520 F. Supp. 2d 671, 676 (M.D. Pa. 2007) (concluding that, despite counsels' discussions regarding extensions of time, service was not

---

[6]  It is well established that § 1441(b)'s thirty-day filing period, while not jurisdictional, is mandatory, and that this "inflexible rule of law" cannot be extended by the parties' consent or by the court.  Peter Holding Co. v. Le Roy Foods, Inc., 107 F. Supp. 56, 57-58 (D.N.J. 1952) (noting that even the court has "no discretionary power to enlarge this period."); Galvanek v. A T & T, Inc., No. 07-2759, 2007 WL 3256701, at *2 (D.N.J. Nov. 5, 2007); Crompton v. Park Ward Motors, Inc., 477 F. Supp. 699, 701 (E.D. Pa. 1979); see also 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3732 at 527 (2d ed. 1985) ("time limitations in Section 1446 are mandatory . . . . They will not be extended by . . . stipulations, or court orders").  But the issue here is qualitatively different.  Here, the issue is whether and when Plaintiff effected service, and this Court obtained jurisdiction over, the SP Defendants in order to trigger the removal period.

waived until defense counsel completed the acceptance of service form); <u>Di Loreto</u>, 351 F. App'x at 752 (holding that the District Court did not err in concluding that an email was insufficient to waive service; rather, the first clear indication that defendant would forego any challenge to defective service was when he signed the acceptance of service form).

This conclusion also is in accord with New Jersey law.  New Jersey Court Rule 4:4-6 provides that "an acceptance of the service of summons, signed by the defendant's attorney, or signed and acknowledged by the defendant . . . shall have the same effect as if the defendant had been properly served."  In <u>Staskewicz v. Harrington Corp.</u>, plaintiff mailed the defendants' counsel a courtesy copy of the complaint and the acknowledgement of service on February 17, 2010.  No. 10-3361 (RBK/AMD), 2011 WL 976498, at *2 (D.N.J. Mar. 14, 2011).  The defendants executed the acknowledgement of service on June 10, 2010.  <u>See id.</u>  The court held that service was proper, under New Jersey Court Rule 4:4-6, as of June 10, 2010, thereby rendering the defendant's July 1, 2010 notice of removal timely.  <u>See id.</u>; <u>see also</u> <u>Joshi v. K-Mart Corp.</u>, No. 06-5448, 2007 WL 2814599, at *3 (D.N.J. Sept. 25, 2007) (holding that "the removal period . . . was triggered when service was properly effectuated upon Defendant's counsel, as evidenced by the execution and return of the Acknowledgement of Service . . . .").

Here, the SP Defendants executed the Acknowledgements of Service on December 23, 2014.  <u>See</u> Exh. 1 to Gistenson Decl., Mar. 2, 2015, D.E. 15-1.  Thus, service was completed and this Court obtained personal jurisdiction over the SP Defendants as of December 23, 2014, thereby triggering the thirty-day removal period.  The SP Defendants filed the Notice of Removal on January 22, 2015, which was within the thirty-day statutory limit for removal. Therefore, removal was timely under 28 U.S.C. § 1446(b).

### 2.  CAFA Jurisdiction

The next issue before the Court is whether the SP Defendants properly removed this action pursuant to CAFA.  CAFA confers on district courts "original jurisdiction of any civil action" in which three requirements are met:  "(1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consists of at least 100 or more members ('numerosity requirement')".  Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)). The removing party bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.  Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006).  In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal.  Frederico, 507 F.3d at 197; Morgan, 471 F.3d at 474.  The proper test in a CAFA removal action depends on the nature of the jurisdictional facts alleged and whether they are in dispute.  Judon v. Travelers Property Cas. Co. of America, 773 F.3d 495, 500 (3d Cir. 2014).

This Court finds that the SP Defendants properly removed this action pursuant to CAFA. Here, the parties do not dispute that the SP Defendants adequately alleged that there is minimal diversity between the parties, and that there are at least 100 class members.  The parties, however, dispute whether the SP Defendants have established that the amount in controversy exceeds $5,000,000.

As the SP Defendants observe in the Notice of Removal, the Complaint is silent regarding the amount in controversy.  See Notice of Removal, at ¶ 13, Jan. 22, 2015, D.E. 1.  The Complaint stated that the proposed class includes individuals entitled to "recover statutory damages of not less than $100 and not more than $1,000, along with punitive damages, costs of

this action, and reasonable attorney's fees" under the NJFCRA, and "statutory damages of not

less than $100.00 per violation, along with reasonable attorneys fees and court costs" under the

TCCWNA.  See Compl., at ¶¶ 2, 5, Exh. 1 to Notice of Removal, Jan. 22, 2015, D.E. 1-2.  The

Complaint did not explicitly allege the total class damages, or the damages suffered by

individual class members.  Thus, Plaintiff's allegations "[threw] no light upon [the] subject" of

the total amount in controversy.  See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S.

178, 181 (1936).  Because the Complaint is silent on this element, the SP Defendants argue that

their Notice of Removal then "serves the same function as the complaint would in a suit in

federal court."  See Notice of Removal, at ¶ 12, Jan. 22, 2015, D.E. 1 (citing Morgan, 471 F.3d at

474).  Accordingly, the SP Defendants assert that during the time period from November 1, 2011

through July 29, 2013, the Port Imperial Facility processed more than 50,000 customer credit

card transactions for parking.  See Notice of Removal, at ¶ 13, Jan. 22, 2015, D.E. 1; see also

Declaration of Nouredine Sadik ("Sadik Decl.") in Supp. of the SP Defs.' Opp'n Br., at ¶ 25,

Apr. 20, 2015, D.E. 34.  By multiplying the total number of credit card transactions at issue by

the potential statutory damages Plaintiff seeks in the Complaint, the SP Defendants argue that the

amount in controversy exceeds $5 million by a preponderance of the evidence.  See Notice of

Removal, at ¶ 16, Jan. 22, 2015, D.E. 1.  The SP Defendants further contend that the punitive

damages, attorneys' fees and costs add to the potential damages.  See id.

On the other hand, Plaintiff argues that the SP Defendants cannot satisfy the $5 million

threshold because they cannot demonstrate by a preponderance of the evidence that only one

credit card terminal at the Port Imperial Facility processed at least 5,000 to 50,000 credit or debit

card transactions displaying "more than the last five digits of [a] credit or debit card account

number between November 6, 2010, through July 29, 2013."  See Pl.'s Second Mot. to Remand,

at 14, Mar. 19, 2015, D.E. 26-3.  Plaintiff further contends that the SP Defendants took advantage of a clerical error in the Complaint, and incorrectly focused on a class "without geographic boundaries" instead of one local commuter parking lot.[7]  See id. at 12.

Where there is a challenge to the amount in controversy either in the pleading or the notice of removal, but "no evidence or findings in the trial court [are] addressed", the "party alleging jurisdiction" is required to "justify his allegations by a preponderance of the evidence." McNutt, 298 U.S. at 189; see also Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 397 (3d Cir. 2004).  An estimate of the recoverable amount should be "objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated."  Samuel-Bassett, 357 F.3d at 403.  This estimate should also not be based on the "low end of an open-ended claim," but rather on a "reasonable reading of the value of the rights being litigated."  Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002).

---

[7] Plaintiff asserts that his definition of the putative class in the Complaint did not include language limiting it to Port Imperial Facility users because of a "clerical error."  See Pl.'s Second Mot. to Remand, at 12, Mar. 19, 2015, D.E. 26-3.  Plaintiff further contends that the SP Defendants "[took] advantage of [this] obvious clerical error" to establish that the amount in controversy exceeds $5 million.  See id.  Plaintiff thus argues that the SP Defendants cannot satisfy the amount in controversy because despite the error, the remaining allegations in the Complaint establishes that the proposed class is limited to the Port Imperial Facility.  See id. at 12-13.

The SP Defendants allege, in the Notice of Removal, that Plaintiff's definition of the proposed class was not limited geographically or to any particular facility.  See Notice of Removal, at ¶ 13, Jan. 22, 2015, D.E. 1.  However, the SP Defendants do not rely on only this argument to establish the amount in controversy element.  The SP Defendants also assert that aggregating the claims exceeds $5 million based on its Senior Manager's, Nouredine Sadik, review of financial data, which determined that the Port Imperial Facility's "Fee Computer Number 12 processed more than 50,000 credit card transactions during the period of time from November 1, 2011, through July 29, 2013."  See Declaration of Nouredine Sadik ("Sadik Decl.") in Supp. of the SP Defs.' Opp'n Br., at ¶ 25, Apr. 20, 2015, D.E. 34.  Thus, the SP Defendants did not "take advantage" of Plaintiff's "obvious clerical error" to establish the amount in controversy element under CAFA.

For example, in <u>Judon</u>, the removing defendant's estimate of the putative class members' compensatory damages relied on the maximum exposure per plaintiff in the amount of $20,000. 773 F.3d at 507.  The class representative's individual claim, however, totaled only $2,636.40. <u>See id.</u>  The defendant also did not provide any "proof to a reasonable probability" evidencing damages suffered by individual class members.  <u>See id.</u> at 508 (citing <u>Frederico</u>, 507 F.3d at 195 n.6).  Thus, the court in <u>Judon</u> concluded that there were insufficient facts to establish by a preponderance of the evidence that the amount in controversy element was satisfied.  <u>See id.</u>

In this case, the Court finds that the SP Defendants have satisfied their burden of establishing that the amount in controversy exceeds $5 million.  The SP Defendants correctly observe that the Complaint is indeterminate regarding the amount in controversy.  <u>See</u> Notice of Removal, at ¶ 13, Jan. 22, 2015, D.E. 1.  Because the Complaint is silent, the SP Defendants' Notice of Removal "serves the same function[] as the complaint would in a suit filed in federal court." <u>Morgan</u>, 471 F.3d at 474.  The SP Defendants allege that aggregating the claims exceeds $5 million.  <u>See</u> Notice of Removal, at ¶ 16, Jan. 22, 2015, D.E. 1.  Unlike in <u>Judon</u>, the SP Defendants do not rely on the maximum exposure per plaintiff; rather, the SP Defendants provide an objective estimate of the recoverable amount and a methodology for their estimate. Through its Senior Manager, Nouredine Sadik, the SP Defendants assert that "Fee Computer Number 12 processed more than 50,000 credit card transactions during the period of time from November 1, 2011, through July 29, 2013." <u>See</u> Sadik Decl., at ¶ 25, Apr. 20, 2015, D.E. 34. The SP Defendants then multiplied the number of credit card transactions by the potential statutory damages of "not less than $100 and not more than $1,000" under both the NJFCRA and the TCCWNA.  <u>See</u> Notice of Removal, at ¶ 16, Jan. 22, 2015, D.E. 1.  Therefore, even at the minimum amount available within the range, the recovery could equal $5,000,000.  Moreover,

Plaintiff seeks punitive damages and attorney's fees, which are included in calculating the amount in controversy.  See Golden v. Golden, 382 F.3d 348, 356 (3d Cir. 2004); see also Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997).  Thus, the Court is satisfied that the SP Defendants have met their burden of establishing the amount in controversy.

  Plaintiff nevertheless argues that the local controversy exception and the home state exception to CAFA apply here, and thus require the court to remand this action.  See Pl.'s Second Mot. to Remand, at 16, Mar. 19, 2015, D.E. 26-3.  Thus, the next issue is whether either of the CAFA exceptions applies.

### i.  The CAFA Exceptions

  Within CAFA, there are two exceptions that direct district courts to decline jurisdiction in favor of the appropriate state court: (1) the local controversy exception, see 28 U.S.C. § 1332(d)(4)(A); and (2) the home state exception, see id. at § 1332(d)(4)(B).  See Dicuio v. Brother Int'l Corp., No. 11-1447 (FLW), 2011 WL 5557528, at *1 (D.N.J. Nov. 15, 2011).  The party seeking removal bears the burden of demonstrating that an exception to CAFA applies. Kaufman, 561 F.3d at 153.

### a.  Local Controversy Exception

  A party seeking to invoke the local controversy exception must demonstrate that:

> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

Vodenichar v. Halcon Energy Properties, Inc., 733 F.3d 497, 506-07 (3d Cir. 2013). [8]  The party

---

[8] The local controversy exception, 28 U.S.C.A. § 1332(d)(4)(B), provides:

seeking to invoke this exception bears the burden of proving each element by a preponderance of the evidence.  See id. at 503 (citing Kaufman, 561 F.3d at 153-54).

Plaintiff asserts each element of the local controversy exception is met and remand is warranted.  See Pl.'s Second Mot. to Remand, at 20, Mar. 19, 2015, D.E. 26-3.  For example, Plaintiff argues that all or "at least two-thirds" of the members of the proposed plaintiff class are New Jersey citizens because:  (1) the Port Imperial Facility is a commuter parking lot; (2) Weehawken, New Jersey does not border any other state; (3) the Port Imperial Facility is located in a residential area and thus caters to New Jersey residents who work in Manhattan, Hoboken, or Jersey City; (4) the Port Imperial Facility is adjacent to the NY Waterway ferry service to Manhattan; and (5) Port Imperial is not located anywhere near an airport, train station, or interstate bus terminal, which may entice non-New Jersey residents to park there.  See id. at 18-

---

(4) A district court shall decline to exercise jurisdiction under paragraph (2)--
  (A)(i) over a class action in which--
     (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
     (II) at least 1 defendant is a defendant--
        (aa) from whom significant relief is sought by members of the plaintiff class;
        (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
        (cc) who is a citizen of the State in which the action was originally filed; and
     (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
  (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
  (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

19.  In support of this argument, Plaintiff submits various maps and photographs of the Port Imperial Facility and its surrounding area.  See, e.g., Solomon Decl. in Supp. of Pl.'s Reply, at ¶ 5 (photograph of the entrance of the NY Waterway ferry), ¶ 10 (photograph of a New Jersey Transit bus stop), ¶ 12 (photograph illustrating that the Port Imperial Facility is surrounded by hi-rise condominiums), Mar. 8, 2015, D.E. 18-1.  Thus, Plaintiff argues that "there is little doubt" that "greater than two-thirds" of the class's members are citizens of New Jersey.  See id. at 20.

Plaintiff further contends that the remaining requirements are satisfied because:  (1) at least one defendant, Central Parking of New Jersey, Inc., is a "significant defendant" for CAFA purposes; (2) any and all "principal injuries" resulting from the SP Defendants' allegedly unlawful conduct were "incurred" in New Jersey; and (3) Plaintiff does not know any other class action that asserts the "same or similar factual allegations" against any of the defendants.  See Pl.'s Second Mot. to Remand, at 17, 20, Mar. 19, 2015, D.E. 26-3.

The SP Defendants argue that the local controversy exception does not apply to this case because, for example, another class action has been filed arising from the same facts and asserting similar claims.  See SP Defs.' Opp'n Br., at 14, Apr. 20, 2015, D.E. 33.  Specifically, another putative class action, Flaum v. SP Plus Corp., No. 14-62333-UU ("Florida action"), was filed approximately one month before Plaintiff filed the Complaint here.  See id. at 14.  The Florida action alleges that SP Plus Corporation and its affiliate violated the Fair and Accurate Transactions Act ("FACTA") by providing the plaintiff with a receipt unlawfully displaying the first six and last four digits of his credit card number.  See id.; see also Exh. A to SP Defs.' Opp'n Br., Apr. 20, 2015, D.E. 33 ("Florida Complaint").  The complaint in the Florida action recites an instance on October 1, 2014 in which the plaintiff there parked at a USA Parking facility in Florida, but the putative class is not limited geographically or to any particular facility.

See Florida Complaint, at ¶¶ 29-30.  The Florida Complaint defines the putative class as follows:

> (i) All persons in the United States (ii) who, when making a payment to a parking garage displaying the USA Parking logo (iii) made such a payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed shall print more than the last 5 digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.

Id. at ¶ 43.

Because the allegations in the Florida action are similar to Plaintiff's claims in this case, and the Florida action was filed one month before Plaintiff filed the Complaint here, the SP Defendants argue that Plaintiff cannot satisfy the "no other class action" element of the local controversy exception.  See SP Defs.' Opp'n Br., at 14-16, Apr. 20, 2015, D.E. 33.

CAFA does not define what constitutes an "other class action" other than to limit it to filed cases asserting similar factual allegations against a defendant.  See Vodenichar, 733 F.3d 497 at 508.  The Third Circuit has reasoned that in enacting CAFA, Congress intended to ensure that defendants did not face "copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases."  See id.  The Third Circuit thus concluded that the "no other class action" factor must not be read too narrowly.  See id.  Instead, the appropriate inquiry is "whether similar factual allegations have been made against the defendant in multiple class actions—and hence they are facing separate, distinct lawsuits—without regard to the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories."  See id. at 509 (citations omitted).

In Vodenichar, the same representative plaintiffs filed two complaints on behalf of an identically-defined putative class arising from the same factual allegations.  733 F.3d at 509.

While the first filed action was pending in federal court, the parties engaged in discovery, and thereafter sought to add additional defendants.  See id.  Instead of amending the first filed complaint, Plaintiffs moved to voluntarily dismiss the first filed action.  See id.  The District Court granted the motion, but ordered the parties to retain the discovery that they had exchanged to use in the second filed action.  See id.  The Third Circuit reasoned that the District Court's actions showed that it considered the second filed action a continuation of the first filed action.  See id.  The Vodenichar court held that the first filed action was therefore not an "other class action" under CAFA, but rather was the same case, albeit enlarged; thus, the "no other class action" prong of the exception was satisfied.  See id. at 509-10.

Unlike in Vodenichar, here, the first filed Florida action constitutes an "other class action" as contemplated under CAFA.  The current action is not simply a continuation of the Florida lawsuit, as it involves different representative plaintiffs and counsel in different forums.  Rather, the underlying factual allegations are similar in both actions—both cases allege that the SP Plus Corporation and affiliate violated a similar statute by providing the plaintiff with receipts unlawfully displaying the first six and last four digits of the plaintiff's credit card number.  See SP Defs.' Opp'n Br., at 14, Apr. 20, 2015, D.E. 33; see also Notice of Removal, at ¶¶ 31-34, Jan. 22, 2015, D.E.1.  Although Plaintiff argues that the two cases do not involve the same factual allegations because this action arises under New Jersey state law, see Pl.'s Reply, at 10, Apr. 27, 2015, D.E. 35, courts are instructed not to read the "no other class action" factor too narrowly, see Vodenichar, 733 F.3d 497 at 508.  Moreover, Plaintiff asserts in the Complaint that N.J.S.A. 56:11-28 of NJFCRA is "modeled after" 15 U.S.C. § 1681c(g) of FACTA.  See Compl., Exh. 1 to Notice of Removal, at ¶ 20, Jan. 22, 2015, D.E. 1-2.  Plaintiff further claims that "[b]oth the federal and New Jersey statutes serve to aid in the prevention of identify theft and credit/debit

24

card fraud, improve the accuracy of consumer information and make improvements in the use of and consumer access to credit information." Id. The two class actions thus have similar factual allegations against certain of the same defendants for violating an analogous statute. Therefore, the Court finds that the Plaintiff does not satisfy the "no other class action" prong.

In addition, the Court concludes that Plaintiff fails to prove that at least two-thirds of the putative class members are New Jersey citizens. See SP Defs.' Opp'n Br., at 16-19, Apr. 20, 2015, D.E. 33. The maps and photographs of the Port Imperial Facility and its immediate surroundings on which Plaintiff relies are hardly reliable indicia of the likely citizenship of the putative class. At best, they permit conjecture and assumptions. For example, Plaintiff asserts that the parking facility caters only to New Jersey residents who commute to Manhattan, Hoboken, or Jersey City because it is located in a residential area, and it is not near an airport. See Pl.'s Second Mot. to Remand, at 18-19, Mar. 19, 2015, D.E. 26-3. From this premise, the source itself of which is unclear, Plaintiff concludes that "an overwhelming majority" of the class members are New Jersey citizens. See id. at 20. However, Plaintiff fails to account for situations where, for instance, New York residents or tourists may travel through and commute to New Jersey, and park their vehicle at the Port Imperial Facility. See, e.g., Dicuio, 2011 WL 5557528, at *5 (reasoning that "New York, Pennsylvania, and Delaware residents often travel through and commute to New Jersey, purchasing goods along their travels. I see no basis for presuming that two-thirds of those who purchase goods in New Jersey are New Jersey citizens.") Indeed, Plaintiff acknowledges that "[o]ther than the ferry, parking patrons can walk outside the terminal to nearby New Jersey Transit bus service for northbound service to Bergen County, New Jersey[.]" Pl.'s Reply, at 10, Mar. 8, 2015, D.E. 18-1. Furthermore, Plaintiff's Complaint did not limit the putative class to current residents and/or citizens of New Jersey. Thus, those

who were New Jersey residents several years ago in 2010, 2011, 2012, or 2013, may have since relocated and become citizens of other states.  See, e.g., Dicuio, 2011 WL 5557528, at *4 (noting that "because the proposed class includes all purchasers since 2005, those who were New Jersey residents several years ago in 2005, 2006, and 2007, may have since relocated and become citizens of other states.").  It is Plaintiff's burden to establish citizenship by a preponderance of the evidence, not by compounded assumptions.  Because Plaintiff failed to do so, and thus did not satisfy every element, the local controversy exception is inapplicable here.

### b.  Home State Exception

The home state exception provides that a district court must decline to exercise jurisdiction where "two thirds or more of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  A party seeking to invoke this exception must therefore:  (1) establish that the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed; (2) establish the citizenship of the defendants; (3) identify the primary defendants; and (4) demonstrate that two-thirds or more of the members of the putative class are citizens of the same state as the primary defendants.  See Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 514-15 (E.D. Pa. 2007).  If a class action meets these requirements, a district court must remand the case back to the state court where it was originally filed.  Dicuio, 2011 WL 5557528, at *2.  The party seeking to remand the suit back to state court bears the burden of satisfying the home state exception requirements.  Id. (citing Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007)).

As previously discussed, the Court concludes that Plaintiff failed to establish that more

than two-thirds of the class members are citizens of New Jersey.  Other district courts within the Third Circuit have denied motions to remand where the plaintiff failed to provide any evidence of citizenship.  For example, <u>Anthony v. Small Tube Mfg. Corp.</u> involved a class action suit where the class was defined as any worker of a particular Pennsylvania factory.  535 F. Supp. 2d at 508.  In that case, the court found that the home state exception did not apply because the plaintiff failed to provide evidence to support the citizenship of the class, or define the class as Pennsylvania citizens.  <u>See</u> <u>id.</u> at 517.  The court reasoned that, although one could infer that the factory workers were domiciled in Pennsylvania, such an inference does not satisfy the plaintiff's burden of proof:  "Individual employees may retire and move away.  Employees may change jobs and move to another State or country.  Employees may also commute from an out-of-state location."  <u>Id.</u>

Similarly, in this case, rather than defining the class as "[a]ll individuals to whom defendants . . . provided an electronically-printed receipt" unlawfully displaying plaintiff's credit or debit card account number from November 6, 2010 through July 29, 2013, <u>see</u> Compl., Exh. 1 to Notice of Removal, at ¶ 40, Jan. 22, 2015, D.E. 1-2, Plaintiff could have defined the class as "all New Jersey citizens" to whom defendants provided such receipts.  Having failed to define the class as New Jersey citizens, Plaintiff bears the burden of supplying evidence that two-thirds of the putative class members are New Jersey citizens in order for remand to be mandatory.  Plaintiff's submission of various maps and photographs of the parking facility's location and surrounding area, does not meet this burden.  Thus, the home state exception does not apply and remand is not warranted.

### c. Discretionary Home State Exception

CAFA, further, grants district courts discretion to decline jurisdiction over classes comprised of between one-third and two-third citizens of the state from which the action was removed, and the primary defendants are citizens of the state from which the action was originally filed.  Hirschbach v. NVE Bank, 496 F. Supp. 2d 451, 459 (D.N.J. 2007) (citing 28 U.S.C. § 1332(d)(3)).  Before exercising that discretion, a court must also engage in a totality of the circumstances balancing test, considering a number of statutorily enumerated factors.[9]  These factors are designed to elicit whether the parties' dispute is "uniquely local" as opposed to multistate in character.  Kaufman, 561 F.3d at 149.  If the balance of factors suggests that the dispute is local, the court may exercise its discretion to remand.  Dicuio, 2011 WL 5557528, at *2.

At the least, Plaintiff must provide evidence that one-third of the class are citizens of

_____

[9] The factors are:

    (A) whether the claims asserted involve matters of national or interstate interest;

    (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

    (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

    (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

    (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

    (F) whether, during the  3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

28

New Jersey in order for the Court to exercise its discretion to remand.  Hirschbach, 496 F. Supp. at 459 (citing 28 U.S.C. § 1332(d)(3)).  Plaintiff's filings contain no facts or evidence suggesting that one-third or two-thirds of the class is comprised of New Jersey citizens.  While Plaintiff has provided the Court with pictures of the parking facility's geography and demographics, as well as arguments as to why the parking lot only caters to New Jersey residents, the Court need not rely upon this data or argumentation.  Again, it is the Plaintiff's burden to demonstrate citizenship.  In light of Plaintiff's failure to provide any such evidence, no further analysis is needed.  Thus, the Court need not exercise its discretion to decline jurisdiction.

### 3.  Fees

As a final matter, Plaintiff requests that the Court award him costs and fees against the SP Defendants.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Although the court has "broad discretion" in determining whether to award fees, Mints v. Educ. Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996), such an award is only appropriate if the removing party "lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Here, because the Court recommends denying Plaintiff's motion to remand the action, awarding fees and costs is inapplicable.

## IV.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion to remand the action to the Superior Court of New Jersey, Law Division, Essex County [D.E. 26] be **denied**.  The parties have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Civil Rule 71.1(c)(2).


*s/ Michael A. Hammer*
_____
**United States Magistrate Judge**

Dated: May 28, 2015